[Civ. No. 34593. Second Dist., Div. Five. Apr. 23, 1970.]

N. GIESLER, Plaintiff and Respondent, v.
GIDEON BERMAN, Defendant and Appellant.

920

**COUNSEL**

Sidney R. Troxell for Defendant and Appellant.

Bernard B. Laven for Plaintiff and Respondent.

**OPINION**

**FRAMPTON, J.\*—**

### Statement of the Case

This is an action by the assignee of International Cultured Pearl Co., a New York corporation, doing business in New York, against Bernard Baruch and Gideon Berman for money due for goods delivered to Baruch on memorandum, and upon a written instrument whereby Berman guaranteed to pay Baruch's debt to plaintiff's assignor for such goods.

The first cause of action in the second amended complaint alleged that Baruch was indebted to plaintiff's assignor (hereinafter plaintiff) in the sum of $25,455 on account of goods sold and delivered to defendants in the City of Los Angeles. The second cause of action alleged the same amount to be due from Baruch upon a book account.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

The third cause of action alleged that on March 20, 1964, at Los Angeles, California, defendants Baruch and Berman executed and delivered to plaintiff an agreement in writing in words and figures as follows:

"Gideon Berman

629 W. 6th Street

Los Angeles 17, Calif.

"Messrs. INTERNATIONAL CULTERED PEARL CO.

c/o Messrs Samourai S.A.

5, rue du Marché

Geneva Switzerland

Geneva, 20th March 1964

Dear Sirs,

"I confirm hereby the agreement concerning the credit I have asked you to grant to Mr. Bernard BARUCH, 9465 Wilshire Blvd., Beverly Hills, Calif., U.S.A., for the goods he will buy from you, for an amount maximum of US $30,000.00.

"In case Mr. B. Baruch, for whatever reason, would not be in a position to pay for the goods he bought from you, or the goods you have entrusted him, I personally guarantee that I shall immediately pay the whole amount of his debt towards you.

"Mr. B. Baruch will take goods from you and will sell them, and the profits made by Mr. B. Baruch will be divided as follows:

"50% for Mr. B. Baruch

30% for Mr. G. Berman

20% for Messrs. INTERNATIONAL CULTURED PEARL CO.

"Hoping that you will agree with the present arrangements, I remain, dear Sirs,

Yours faithfully,

/s/ Gideon Berman

G. BERMAN

"P.S. Mr. Baruch will take the goods under approval-memorandum basis and I will be personally responsible for all the goods Mr. Baruch will take under the above-mentioned conditions, as well as for the the goods he sold under said conditions.

"Mr. Baruch has no right to buy merchandise on credit unless a written approval by me is received.

/s/ Gideon Berman"

It is then alleged that thereafter, in consideration of the aforementioned agreement, plaintiff delivered at New York City, New York, on May 19, 1964, merchandise on written memoranda (i.e., consignment) of the total value of $15,657, on conditions contained in such memoranda, among others, that such merchandise was delivered for inspection only, and that title thereto shall pass only when the owner shall agree to a sale and a bill of sale shall be rendered thereon. That within five days after delivery, plaintiff demanded the return of such merchanadise from Baruch, who refused to return it or pay for the same. That notice of demand for the return of the merchandise and nonpayment therefor was given to defendant Berman on June 20, 1964, and plaintiff demanded payment from Berman in accordance with the guarantee. That Berman has failed to pay in accordance with the terms of the guarantee, and is, therefore, indebted to plaintiff in the sum of $15,657, with interest from May 19, 1964.

The fourth cause of action alleges that plaintiff, at the special instance and request of Berman, delivered merchandise to Baruch of the reasonable value of $25,455, which Berman promised to pay for. That Berman has not paid for such merchandise, and such sum is now due and owing by Berman to plaintiff. Only the third and fourth causes of action apply to Berman.

The answer of Berman to the second amended complaint admits the execution and delivery of the writing guaranteeing the payment of Baruch's debts, but alleges that such agreement was executed by all parties and was delivered in Geneva, Switzerland, and constituted, and was intended to constitute an agreement with International Cultured Pearl Co. of Geneva, Switzerland, and not with plaintiff, the New York corporation. The first separate defense of the answer alleges that the agreement is void under Swiss law.

The pretrial stipulation admitted that Berman signed the contract guaranteeing the payment of Baruch's debts, that goods were delivered to Baruch as alleged, that demand had been made on him (Berman) for payment, and he (Berman) had not paid any sums of money to plaintiff pursuant to such demand. Berman did not admit that Baruch did not pay for the goods, and Berman's answer to the third cause of action denied upon information and belief that Baruch had not paid plaintiff for the goods. Thus, the issue whether Baruch had paid the debt which Berman is alleged to have guaranteed is placed in issue by the pleadings and the pretrial statement.

Baruch defaulted, and judgment was ordered in favor of plaintiff and against Baruch in the sum of $25,455. The record does not disclose that a judgment was entered against Baruch as a result of this order. No question is raised here concerning the form of the judgment under attack. Judgment was rendered in favor of plaintiff and against Berman in the sum of $15,657. The trial court evidently took the view that Berman's liability under the agreement of March 20, 1964, was limited to goods delivered to Baruch upon the "approval-memorandum basis," set forth in the agreement. The appeal is by Berman only from the judgment after his motion for a new trial was denied.

### Statement of Facts

Defendant Berman was called as a witness pursuant to Evidence Code section 776. Certain exhibits were received in evidence by stipulation. Plaintiff produced no other witnesses in court.

Berman testified that he and Baruch were dealers in precious stones. He had known Baruch for about one year prior to 1964, and had made a direct sale to him about two months prior to March of 1964. He understood that in a direct sale of merchandise, title passed to the buyer, whereas, in a sale on memorandum, the seller retained title. He was a citizen of the United States and a resident of the City of Los Angeles. He operated a bookshop in Los Angeles, and conducted his business in precious stones from his bookshop.

Berman testified further that he went to Geneva, Switzerland in March of 1964. He met Baruch and one Zalcman there. He had met Zalcman before in 1961 or 1962. Zalcman represented to Berman that International Cultured Pearl Co. of Switzerland was owned by Zalcman and two other partners, and Internatonal Cultured Pearl Co. of New York (plaintiff) was a separate company which had nothing to do with the Swiss company. Berman also testified that Zalcman told him that International Cultured Pearl Co. of Geneva was using the name as a franchise; there were different branches of the company, one in Japan, one in New York, one in Geneva, and one in Frankfurt, Germany; that the New York company was owned by Zalcman, one Rodin, and "a couple of other people."

Berman knew before he went to Geneva that there was an International Cultured Pearl Company in New York. Before executing any guarantees in Geneva, he was told that International of New York had previously delivered merchandise to Baruch on memorandum. Zalcman told him that neither International of Geneva nor Samourai, a company wholly owned by Zalcman, would deliver merchandise on memorandum but that International of New York would.

On March 24, 1964, at Geneva, Switzerland, Berman executed two guarantees for the debts of Baruch. One was in favor of International Cultured Pearl Co., whose address is given as "c/o Messrs. Samourai S.A. 5, rue du Marché, *Geneva* Switzerland," and the other is in favor of "Messrs. Samourai S.A." of the same address. The language of these guarantees is identical except for the division of the profits. In the International guarantee, 20 percent of the profits from Baruch's sales go to International. In the Samourai guarantee, 20 percent of the profits from Baruch's sales go to Samourai. The two guarantees were executed because, as explained by Zalcman to Berman, International Cultured Pearl Company dealt in certain kinds of merchandise, and Samourai, which belonged exclusively to Zalcman, dealt in another kind of merchandise. Berman understood, in executing the guarantees, that he would be responsible for merchandise delivered to Baruch, upon the sale of which he would receive a profit, Zalcman would receive a profit, and Baruch would receive a profit, because Baruch had been doing business with the "New York outfit for years." He understood that he was responsible for all merchandise delivered to Baruch on memorandums if it involved a profit-sharing deal.

In Geneva, at the time the guarantees were signed, Berman knew that International of Geneva had some connection with International of New York, and that Zalcman was a partner in the New York firm. At this time Zalcman told Berman and Baruch that if any of the strings of pearls were broken he could not take them back. Baruch said "Well, they do that in New York." Zalcman replied, "Well, I can't do it here. If they do it in New York, that's all right, but as far as I am concerned the deal is off." No merchandise was taken in Geneva as a result of this discussion. When Zalcman stated that "the deal is off," Berman understood this to refer to any deal with International Cultured Pearl Co. of Geneva.

Although the opportunity to cancel and destroy the guarantees was available to Berman at this time, if he believed that the documents covered only deliveries under memorandum to be made to Baruch in Switzerland and not deliveries of merchandise to be made to Baruch in New York, he did not do so.

On May 19, 1964, International Cultured Pearl Co. of New York delivered to Baruch in New York City, on memorandum, merchandise of the value of $15,657. This action followed, based upon the claim that Baruch had defaulted in his obligation to either return or pay for the merchandise, and that as a result of such default Berman was liable therefor upon his guarantee.

A few days after signing the guarantees in Geneva, Berman returned to Los Angeles. About a month or two later, Berman met Lew Rodin, president of International Cultured Pearl Co., Inc. of New York, in the former's hotel room in New York City. At this time Rodin told Berman that Baruch had taken some merchandise from him (Rodin) and he would like to get it back. Berman testified further concerning this meeting that "Mr. Rodin told me he thinks—he made a telephone call to Geneva and talked to Mr. Zalcman and Mr. Zalcman—and he told him that Br. Baruch took some merchandise from him and he is worried about it, and he said, 'I understand there is an agreement between you and Mr. Berman,' and Mr. Zalcman said, 'Yes'; and Rodin told me, 'Mr. Zalcman must like you very much because he told me Mr. Berman has nothing to do with what happened to New York. If there is any loss going to be taken, he and Mr. Rodin is going to take the loss, Mr. Berman has nothing to do with it.'

"He said, 'He must like you very much, Mr. Zalcman,' and then he said to me, 'I am going to go after Mr. Baruch and I haven't seen the guarantees, but if you signed the guarantees to Samourai, S.A., you are all right; but if you signed the guarantee to International Cultured Pearl Company, then you may be in more trouble than you think you are.'

"That is what he told me."

On May 21, 1964, Berman wrote the following letter to Zalcman:

"May 21, 1964
*New York*
"Mr. B. Zalcman
Samourai S.A.
Geneva.

"Dr. Mr. Zalcman:

"I regret it very much that I was not able to meet you and Mr. Rodin in New York. I was very busy in Europe, and have sold most of my better goods. I must take another trip to the Orient in the near future, to make sure that I will receive nothing but the best value for the money. From there, I will be comming [sic] to Europe again.

"I am leaving for New Yo[r]k next week for [a] few days, and hope to meet Mr. Rodin there.

"Mr. Barouch [sic] has decided to return to Los Angeles, and is here now. As you know he has an office here, and is working on his own. Since he is not returning to Europe, I would like to take this opportunity and

adive [*sic*] you, that I am withdrawing my guarantee which I gave you for merchandise taken from you, by Mr. Bernard Baruch.

"With the hope that everything is well with you,

"I remain,

Very truly yours,

/s/ Gideon Berman

GIDEON BERMAN

"I am in New York now—from here I am coming to Europe and will pick up the goods $1540 which were selected by Mr. Baruch. He should have mailed you the check by now. If he did not, I will take them."

On June 20, 1964, International of New York, by letter, made demand on Berman for payment of goods delivered to Baruch in the sum of $24,455, in reliance upon the guarantee.

Over the objection of Berman the trial court admitted in evidence the answers to interrogatories directed by Berman to International Cultured Pearl Co., Inc. of New York. In these answers, Lew Rodin, president of the company, whose address is given as the City of New York, stated that no payment was ever received by International of New York for the merchandised delivered to Baruch. No other evidence was offered or received on this issue. The answers to these interrogatories disclose further that Borys Zalcman is a vice-president of International Cultured Pearl Co., Inc.; that International Cultured Pearl Co., Inc. maintains branches in Geneva, Switzerland, Kobe, Japan, the Republic of Panama, and that Borys Zalcman is the manager of International's office in Geneva; that International Cultured Pearl Co., Inc., has no subsidiaries; that International is a corporation organized and existing under the laws of the State of New York, and is a separate and independent entity from Samourai, S.A., Geneva, and from International Cultured Pearl Co. in Germany; that Odette Garrido had no official position with International of New York or any of its branches, but upon information and belief she was a secretary and stenographer in the employ of Samourai, S.A. of Geneva; that Lew Rodin (declarant) told Berman in the latter part of May 1964, in Berman's hotel room in New York City that International of New York had delivered merchandise to Baruch on memorandum, and confirmed this information by letter to Berman under date of June 20, 1964.

Aside from these declarations contained in the answers to interrogatories made by Lew Rodin, and admitted in evidence over the objection of Berman, there is no clear and satisfactory explanation of the relationship between International of New York, International of Geneva, and Zalcman.

Over the objection of Berman, answers to interrogatories directed by Berman to International, made by Zalcman, were received in evidence. Interrogatory number 21 is as follows: "Did Zalcman and Baruch or Zalcman and Berman or Zalcman and both of the latter two people have any conversations in which the subject of where Baruch would sell the merchandise contemplated by the contract of March 20, 1964 was discussed[?]" The answer to interrogatory number 21 is as follows: "As per the agreement of March 20, 1964 with International Cultured Pearl Co. Inc., of New York and Samourai S.A. of Geneva, which were set up in Geneva shortly prior to and on March 20, 1964, I specifically stated the following: Samourai S.A. is in principle interested in the sales of goods in Europe only. International Cultured Pearl Co. Inc., is interested in the sales of goods in the United States."

Interrogatory number 23 is as follows: "Were there any conversations in which Zalcman and Baruch discussed receipt of merchandise in New York from plaintiff's assignor? State all conversations in detail, giving dates, places and parties present. State the words said by each party in substance." The answer to interrogatory number 23 is as follows: "In the conversations between Messrs. Berman, Baruch and myself, in Geneva, on or about March 20, 1964, it was stated by me in the presence of both Berman and Baruch, that the purpose of the agreement of March 20, 1964, with International Cultured Pearl Co., Inc., was to cover any merchandise delivered in New York."

## Contentions on Appeal

Defendant Berman urges that (1) the answers to the interrogatories were improperly received in evidence; (2) such answers prejudiced Berman's defense because the trial court relied upon them to supply essentials of plaintiff's cause of action; (3) the validity of the agreement was governed by Swiss law, under which it was void; and (4) the trial court improperly imposed upon Berman the burden of proving payment by Baruch.

We are of the opinion that the judgment must be reversed for reasons hereinafter discussed.

■ For the benefit of the parties upon a retrial, we will first comment on the nature of the agreement. The guarantee provides in part "I confirm hereby the agreement concerning the credit I have asked you to grant to Mr. Bernard Baruch . . . for the goods he will buy from you. . . ." The guarantee continues: "In case Mr. B. Baruch, for whatever reason, would not be in a position to pay for the goods he bought from you . . . I personally guarantee that I shall immediately pay the whole amount of his debt towards you."

Plaintiff urges that the agreement constitutes an original obligation on the part of Berman to pay plaintiff, and makes him a principal debtor. Berman contends that the agreement bound him to pay only on condition that Baruch defaulted. We are of the opinion that the agreement is conditional, and obligates Berman to pay plaintiff for merchandise delivered to Baruch by plaintiff on memorandum, only in event that Baruch defaulted in accounting for merchandise which he did not sell, or in payment for such merchandise as he did sell. In either event, Berman is not obligated to plaintiff in any sum in excess of Baruch's debt to plaintiff.

### Interrogatories

It appears that the trial court received the interrogatories and the answers thereto in evidence on the basis that they were part of the superior court file and the court, therefore, could take judicial notice of them and their content as evidence pursuant to section 452, subdivision (d) of the Evidence Code.[1]

The self-serving hearsay answers by plaintiff's officers to interrogatories posed by Berman were improperly received in evidence to establish the facts related therein. (*Estate of Horman,* 265 Cal.App.2d 796, 805 [71 Cal.Rptr. 780].) The thrust of Berman's defense went to the issue as to whether the agreement covered only merchandise to be delivered to Baruch in Geneva, Switzerland, and whether the agreement, being executed in Geneva, Switzerland, was to be performed there. The place of execution of the contract and the place of its performance would have a direct bearing on whether the law of Switzerland would apply as to the validity and enforcement of the obligation. (Cf. Civ. Code, § 1646; 2 Beale, The Conflict of Laws, § 346.1, p. 1200; Conflict of Laws, 11 Cal.Jur.2d §§ 60, 61, pp. 141 et seq.; *Robbins* v. *Pacific Eastern Corp.,* 8 Cal.2d 241, 273 [65 P.2d 42]; *Thomas* v. *Wentworth Hotel Co.,* 158 Cal. 275 [110 P. 942].)

Zalcman's answers clearly indicate that delivery of the merchandise covered by the agreement was to take place in New York. Berman's testimony indicates that he understood the agreement to cover merchandise delivered to Baruch only in Geneva, Switzerland. In this state of the record we cannot weigh the impact of the answers to the interrogatories upon the trial court's thinking in arriving at its judgment. We are of the opinion

---

[1]Section 452 of the Evidence Code provides in pertinent part as follows: "Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451: . . . (d) Records of (1) any court of this state or (2) any court of record of the United States or of any state of the United States."

that the admission in evidence of the answers to the interrogatories constituted prejudicial error, and compels reversal of the judgment.

### Burden of Proof as to Payment by Baruch

■ Again, for the benefit of the parties upon a retrial of the case, it is the general rule that an allegation of nonpayment, though necessary to the sufficiency of the complaint, need not be proved, since it is a negative allegation. The plaintiff need only prove the existence of the obligation. The burden of proving payment then rests on the defendant, even though he has denied the allegation of nonpayment. (38 Cal.Jur.2d, Payment, § 45, p. 284; 70 C.J.S., Payment, § 93, pp. 298-299; 49 Am.Jur., Payment, § 278, pp. 893-894.) This rule has been applied where the defendant, by written contract, agreed to pay plaintiff's debt to a third person. (*Chapman* v. *Carrothers,* 21 Wyo. 152 [129 P. 434].) It has also been applied where plaintiff sued upon a promise made for her benefit but not to her, where the promisor claimed the obligation had been paid. (*Zioncheck* v. *Hepden,* 144 Wash. 272 [257 P. 835, 836].) We are of the opinion that such rule is applicable here, and that the burden of proof to show payment by Baruch to the plaintiff rested upon Berman who agreed to pay the debt upon Baruch's default.

The judgment is reversed.

Kaus, P. J., and Reppy, J., concurred.